UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CLINTON FAIR,

    Plaintiff,

v.     Case No: 6:15-cv-1133-Orl-40DCI

JONATHAN MILLS,

    Defendant.

## **ORDER**

This cause comes before the Court on the following:

1. Plaintiff's Renewed Motion for Judgment as a Matter of Law on Count II of the Amended Complaint (Doc. 108);

2. Plaintiff's Memorandum in Support of Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion to Amend Complaint to Conform to the Evidence (Doc. 119); and

3. Defendant's Memorandum in Opposition to Plaintiff's Renewed Motion for Judgment as a Matter of Law (Doc. 120).

Upon consideration of the pleadings, the evidence and testimony presented at trial, and the parties' respective memoranda, Plaintiff's Renewed Motion for Judgment as a Matter of Law is due to be granted.

**I.     BACKGROUND**

On August 12, 2014 at 10:41 a.m., the Orlando Police Department ("OPD") issued a "be on the lookout" ("BOLO") for a "rusty grey Toyota Corolla with no tint, four door . . . occupied by a black male named Jeremiah Fillmore." Around this time, Plaintiff,

Clinton Fair ("Fair"), was a passenger in a silver Nissan Sentra being driven by his friend. Sergeant Paul Griffith ("Sergeant Griffith"), an OPD officer who was on duty when the BOLO was announced, saw the car in which Fair was a passenger and, believing that both the car and Fair matched the description given by the BOLO, conducted a traffic stop. Defendant, Officer Jonathan Mills ("Officer Mills"), another OPD officer who was on duty at the time, encountered Sergeant Griffith performing the traffic stop and, although he did not know why Sergeant Griffith initiated the stop, pulled over to assist. As the officer leading the investigation, Sergeant Griffith obtained both the driver's and Fair's identification and ultimately determined that neither was the suspect described in the BOLO.

Although the initial reason for the traffic stop had ended, the officers continued to investigate. Upon returning the driver's identification, Sergeant Griffith asked if he could search the vehicle, to which the driver answered no at least once and perhaps twice. On the opposite side of the car, Officer Mills asked Fair if he had anything illegal on him, to which Fair answered no. Officer Mills also asked if they had drugs or weapons in the vehicle, to which Fair again replied no. Officer Mills acknowledges that he did not observe any contraband in the vehicle and that he lacked an articulable reasonable suspicion to believe that Fair was in possession of a weapon or contraband or that he had committed, was committing, or was about to commit a crime. Similarly, Officer Mills agrees that he lacked probable cause to search either the vehicle or Fair's person.

Officer Mills, lacking any evidence of criminal wrongdoing, exercised his law enforcement prerogative to request Fair to consent to a search of his person. Officer Mills testified at trial that he asked Fair to exit the vehicle, asked permission to search his

2

person, and that Fair voluntarily complied with these requests.[1] As soon as Fair exited the passenger side of the vehicle, Officer Mills testified that he asked Fair to place his hands on top of the vehicle and that Fair complied with his request. Officer Mills then testified that he "guided" Fair's hands into position on the roof of the car. According to Officer Mills, he proceeded to ask Fair to spread his legs, but Fair did not comply with this request. On cross-examination, Officer Mills acknowledged that he had to ask Fair two or three times to spread his legs before Fair complied. Officer Mills described Fair's body as "really tense," and stated that Fair was shaking as if he were nervous. Notwithstanding this information, Officer Mills admitted that he still lacked reasonable suspicion or probable cause to conduct the search.[2]

After Fair complied with Officer Mills' request to spread his legs, Officer Mills testified that he began his search by searching the waistband of Fair's shorts, his pockets, and the exterior of the shorts along his outer thigh area.[3] Officer Mills stated that "[o]nce I started my search, he [Fair] first dropped his hands towards his waistband." Defense counsel then asked if Officer Mills directed Fair to do anything with his hands at this point, and Officer Mills replied: "At that point I said hey whoa, whoa, whoa. Just relax, place

---

[1] Fair denies Officer Mills asked him to exit the vehicle or that Officer Mills sought his consent prior to initiating the search. However, the Court must review the record and draw all reasonable inferences derived therefrom in the light most favorable to Officer Mills as the non-moving party. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010). Accordingly, the Court's analysis is predicated on the premise that Fair voluntarily consented to a search of his person.

[2] Throughout this case Officer Mills has agreed that his search of Fair was never predicated on reasonable suspicion or probable cause and that this case turns entirely on the validity of Fair's consent.

[3] Fair testified that a considerably more invasive search of the interior of his shorts occurred, but for the purpose of this motion, the Court again must accept Officer Mills' version of the events.

your hands back on top of the vehicle." Fair complied with this instruction; however, Officer Mills stated that "I started my search again, and he dropped them down a second time, real fast." Defense counsel asked "[a]nd then what happened, what did you decide?" To which Officer Mills responded:

> I pushed him against the vehicle and said, "Hey, whoa. Relax. I don't know what's going on. You're making me really nervous. I'm going to put you in handcuffs. You're not under arrest. It's just for my safety."

When asked by defense counsel to describe how he came to push Fair, Officer Mills stated that "[a]s he's dropping his hands down rapidly to the waistband, I wanted to pin him up against the car so he couldn't get to the waistband." Accordingly, Officer Mills stated that he "[g]rabbed [Fair's] arms, put them behind him, and then secured him in handcuffs."

After placing Fair in handcuffs, Officer Mills moved Fair to the back of Sergeant Griffith's patrol car, which was located directly behind the vehicle in which Fair had been a passenger. Officer Mills acknowledged, and it is not disputed, that at the moment he placed handcuffs on Fair he continued to lack reasonable suspicion or probable cause to search. Officer Mills also agreed the Fair did not have a choice on whether he would be placed in handcuffs. Moreover, Officer Mills testified that he did not ask Fair for consent to continue the search of his person after placing him in handcuffs. While restrained in handcuffs, Officer Mills continued his search of Fair. The search lasted between one minute and one and a half minutes.

After finding no evidence of a crime, Officer Mills called dispatch to have a drug dog walk around the vehicle. Sergeant Griffith ultimately instructed Officer Mills to cancel the drug dog and to release Fair. Later that day, Fair filed a formal complaint against

Officer Mills. Thereafter, Fair sued Officer Mills pursuant to 42 U.S.C. § 1983 for violating his right under the Fourth Amendment to be free from an unlawful search.[4]

## II.     THE ISSUE

The issue presented in Fair's Renewed Motion for Judgement as a Matter of Law is fairly narrow: whether Fair withdrew his consent to search based on his physical acts, rendering Officer Mills' search a violation of Fair's federal constitutional rights.

## III.    STANDARD OF REVIEW

The party moving for judgment as a matter of law must show that the trial evidence "is so overwhelmingly [in its favor] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). However, where there is substantial evidence in the trial record which would allow reasonable minds to reach different conclusions, judgment as a matter of law is inappropriate. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010). In considering a motion for judgment as a matter of law, the district court must review the record and draw all reasonable inferences derived therefrom in the light most favorable to the non-moving party. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). Importantly, the district court must not make credibility determinations or weigh evidence, as these are functions reserved for the jury. *Id.* Although a trial may result in a mistrial, a district court is nevertheless authorized to enter judgment as a matter of law under Rule 50 based on the evidence adduced at trial. *See* Fed. R. Civ. P. 50(b) (permitting a party to renew a

---

[4] Fair asserts several alleged constitutional violations in Count Two of the Amended Complaint. This Order addresses only Fair's claim that Officer Mills violated his fourth amendment right not to be subjected to an unlawful search.

motion for judgment as a matter of law on an issue which was not decided by the jury); *DeMaine v. Bank One, Akron, N.A.*, 904 F.2d 219, 221 (4th Cir. 1990) (per curiam) (observing the same principle and entering judgment as a matter of law in a case where the jury failed to reach a verdict and "the jury's deadlock appear[ed] to have been the product on unreasonable disagreement").

## IV.   DISCUSSION

### A.   Undisputed Issues

Several facts and legal principles are agreed between the parties. First, the parties have stipulated that Officer Mills was acting under color of law at all relevant times and that he was acting within his discretionary authority when he searched Fair. The parties additionally agree that the initial traffic stop was lawful. They also agree that at all relevant times, Officer Mills lacked a reasonable suspicion sufficient to justify an investigative stop and frisk and lacked probable cause to search or detain Fair at all times. As a result, the parties are in agreement that the only way Officer Mills can escape liability for his search of Fair's person is if Fair consented to that search.

### B.   The Scope of Fair's Renewed Motion

It is well-established that "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a)" and that "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015). Although "[s]trict identity of issues . . . is not required" of the two motions, the grounds identified in a Rule 50(b) motion must be "closely related" to the grounds raised in the prior Rule 50(a) motion such

6

that opposing counsel and the court are notified of the evidentiary shortcomings asserted. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010). This procedural safeguard ensures that "[t]he moving party cannot ambush the court and opposing counsel after the verdict when the only remedy is a completely new trial." *Middlebrooks*, 256 F.3d at 1245.

Following the close of Fair's case-in-chief, Fair's counsel moved for judgment as a matter of law on the unlawfulness of what counsel referred to as the "second search." Essentially, counsel argued that, even assuming that Fair consented to a brief pat-down search (what might be thought of as the "first search"), Fair later withdrew that consent through his actions. As a result, counsel reasoned that Officer Mills' decision to continue searching Fair after consent had been withdrawn (the "second search") violated Fair's federal constitutional rights as a matter of law. Counsel renewed this position following the Court's declaration of a mistrial.

### C.    The Fourth Amendment & Consensual Searches

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."[5] *United States v. Arvizu*, 534 U.S. 266, 273 (2002)

---

[5]   The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment's guarantees are made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

(quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). In the context of a legitimate traffic stop, a police officer can lawfully direct the driver or a passenger to exit the vehicle in order to conduct a brief and limited pat-down search for weapons as long as the officer has reasonable suspicion or probable cause to believe that the individual is engaged in criminal activity or is armed and dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *United States v. Hollins*, 336 F. App'x 921, 922 (11th Cir. 2009) (per curiam).

However, there are exceptions to the requirement that an officer must have probable cause or reasonable suspicion to search a person during a traffic stop. One exception is when the person consents to the search by knowingly and voluntarily agreeing to be searched. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 242–43 (1973). A police officer who searches a person who has consented to that search does not violate a constitutional right. *See id.* Whether a suspect voluntarily gives consent to search is a question of fact to be determined by the totality of the circumstances. *Id.* at 227; *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

There is considerable jurisprudence supporting the notion that consent may be voluntarily given when an individual is confronted by several armed law enforcement officers and even after an individual is placed in handcuffs. *See, e.g.*, *United States v. Garcia*, 890 F.2d 355, 360–62 (11th Cir. 1989); *United States v. Espinosa-Orlando*, 704 F.2d 507, 512–13 (11th Cir. 1983); *accord United States v. Guiterrez*, 92 F.3d 468, 470–71 (7th Cir. 1996). *But see United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir. 1998) ("There is no question that the use of handcuffs, being one of the most recognizable

8

indicia of a traditional arrest, 'substantially aggravates the intrusiveness' of a putative *Terry* stop.") (quoting *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir. 1989)). However, this Court need not navigate the thorny path of case law categorizing which potentially coercive acts may vitiate consent to search. For the purposes of this motion, the Court must assume that Officer Mills' account of the facts is true when he testified that Fair voluntarily consented to exit the vehicle and voluntarily consented to a search of his person. Moreover, the Court must assume that Officer Mills' actual search of Fair's person was limited to the waistband of his shorts, his pockets, and the exterior thigh, and was no more intrusive than as Officer Mills testified. Rather, the real issue on which Fair's motion turns is whether Fair, by either verbal statements or physical acts, withdrew his consent to search and whether Officer Mills continued with the search notwithstanding Fair's withdrawal of consent.

It is well-recognized that an individual who has consented to have a police officer search his person or possessions may later restrict the scope of consent given, including revoking consent entirely. *See, e.g.*, *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) (holding that a person's consent to be subjected to a search operates only as far as the scope of consent given); *United States v. Tatman*, 397 F. App'x 152, 162 (6th Cir. 2010) ("A person who consents to a warrantless search has the right to restrict the scope of the search. This includes the concomitant right of the consenting party to withdraw his or her consent once the search has begun.") (citations omitted); *United States v. Terry*, 220 F. App'x 961, 963 (11th Cir. 2007) (per curiam) (finding that the defendant withdrew his consent to a search of his vehicle when he closed the trunk.). "Withdrawal of consent [to search] need not be effectuated through particular 'magic words,' but an intent to withdraw

consent must be made by unequivocal act or statement." *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir. 2004); *see also United States v. Alfaro*, 935 F.2d 64, 67 (5th Cir. 1991). Just like the giving of consent, whether a person withdraws consent depends on the totality of the circumstances surrounding the encounter, and whether a police officer knows that consent has been withdrawn must be viewed through the eyes of an objectively reasonable police officer in the same circumstances. *See Jimeno*, 500 U.S. at 251.

In order for withdrawal of consent to be effected through conduct, the conduct must be clearly inconsistent with the consent given. *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005). In *Sanders*, the Eighth Circuit cites two cases from the Florida Second District Court of Appeal where physical acts were found to constitute withdrawal of consent. First, in *Jimenez v. State*, 643 So. 2d 70, 72 (Fla. Dist. Ct. App. 1994), consent was withdrawn when the defendant twice grabbed a deputy's hand in an attempt to stop him from searching a pack of cigarettes. Second, in *Lowery v. State*, 894 So. 2d 1032, 1034 (Fla. Dist. Ct. App. 2005), the defendant withdrew his consent to search by twice placing his hands into his pockets when the officer was attempting to search the same location, causing the officer to instruct him to stop. The *Lowery* Court additionally observed that, "[i]n a consensual search, an officer has no authority to command the person being searched to stop interfering with the search." *Id.* The Eighth Circuit in *Sanders* used these two Florida state court cases to conclude that, in the case before it, the defendant unequivocally revoked his consent to search his person when he moved his hands to prevent the search at least five times, prompting the officer to apply handcuffs

in order to complete the search. *Sanders*, 424 F.3d at 775. For this reason, the Eighth Circuit concluded that the search was illegal.

In this case, the Court finds that, based on the evidence and testimony adduced at trial, no reasonable jury could reach a conclusion other than that Officer Mills violated Fair's rights under the Fourth Amendment by continuing to search Fair's person after Fair had unequivocally withdrawn his consent. The Court begins by again emphasizing that it must be assumed that Officer Mills' account that Fair granted consent to search his person is in fact true. However, after Fair exited the vehicle and initially placed his hands on the roof of the car, Officer Mills testified at trial that Fair engaged in conduct which any reasonable police officer in the same circumstances would perceive as clearly inconsistent with the consent given. Officer Mills related to the jury that as he began his search of Fair's waistband, Fair "first dropped his hands towards his waistband," prompting Officer Mills to order Fair to place his hands back on top of the vehicle so he could continue the search. Officer Mills then testified that Fair "dropped them [his hands] down a second time real fast." Officer Mills testified that Fair's dropping of his hands caused him to push Fair against the vehicle in order to place him in handcuffs. As Officer Mills described the events: "As he's dropping his hands down rapidly towards his waistband [the area of the search], I wanted to pin him up against the car *so he couldn't get to the waistband*." (emphasis added). Accordingly, Officer Mills "[g]rabbed his arms, put them behind him, and then secured him in handcuffs." Once secured by handcuffs, Officer Mills moved Fair a few feet away from the original search location and completed his search with Fair restrained.

To the extent Fair voluntarily consented to the search initially, a reasonable officer in the same circumstances would have known that Fair withdrew his consent when he attempted twice to move his hands "real fast" from the roof of the vehicle, the second such movement occurring after being ordered by a police officer not to move his hands. Indeed, Officer Mills indicated at trial that he interpreted these actions as an attempt to frustrate the search, because he testified to pinning Fair up against the car "so he couldn't get to the waistband." However, the entire basis underlying a consensual search is that the person being searched has the right to stop the search at any time by moving around as he pleases. By Officer Mills' own account, he intentionally prevented Fair from exercising his right to withdraw his consent and terminate the search.

Based on the totality of the circumstances and Officer Mills' own admissions at trial, a reasonable officer in the same circumstances would have known that Fair had withdrawn his consent to search when he dropped his hands to his waist two times in an effort to stop the search. Moreover, Officer Mills essentially conceded at trial that he prohibited Fair from exercising his right to withdraw consent. As a result, Officer Mills lacked authority to continue the search based on consent and violated Fair's constitutional rights by continuing the search.  Fair is therefore entitled to judgment as a matter of law on the issue of whether Officer Mills violated his federal constitutional right to be free from unreasonable searches.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Judgement as a Matter of Law as to the unlawful search (Doc. 108) is **GRANTED**. The trial will go forward on the alleged violations of Plaintiff's rights to be free from unlawful seizures and from the use

of excessive force, along with the issues of any damages Plaintiff incurred due to the violation of his constitutional rights.

The Court finds that Plaintiff's request to amend the pleadings to reflect separate counts for the first and second searches is unnecessary. Plaintiff's motion (Doc. 119) is therefore **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 2, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record